IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY LAMBERSON, as Administratrix of the Estate of Melinda Lamberson Reynolds, Deceased,<br><br>　　　　　　　　Plaintiff<br><br>　　　v.<br><br>COMMONWEALTH OF PENNSYLVANIA, *et al.*,<br>　　　　　　　　Defendants | CIVIL ACTION<br>NO. 3:09-cv-1492<br><br>(Judge Munley)<br><br>Electronically Filed |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, pursuant to Local Rule 56.1, hereby set forth the following material facts in response to Plaintiff's Statement of Material Facts in Support of her Motion for Partial Summary Judgment setting forth those facts as to which it is contended that there exists a genuine issue to be tried. Defendants respond to the numbered paragraphs of plaintiff's statement of material facts as follows:

1-3.　　Undisputed.

4.　　Disputed in part. Neither the Newman report nor the Ziegler report states that use of methadone "lead[s] to functional, socially productive, healthy lives." Newman Report, Plaintiff's Appendix Tab A; Ziegler Report, Plaintiff's Appendix Tab B.

5.      Disputed in part.  Neither expert report states that the regulatory standards governing methadone maintenance treatment "provide substantial assurance concerning the safety of such treatment."   Newman Report, Plaintiff's Appendix Tab A; Ziegler Report, Plaintiff's Appendix Tab B.

6-14.   Undisputed.

15.     Disputed in part.  The website states that PHMP operates its programs for "professionals suffering from a physical or mental impairment," not disability. Deposition of Kevin Knipe (8/25/2011) at 13-15, Plaintiff's Appendix Tab D.

16.     Undisputed.

17.     Disputed in part.  The website states that PHMP operates its programs for "professionals suffering from a physical or mental impairment," not disability.

18-19.  Undisputed.

20.     Disputed in part.  Plaintiff's use of the term "PHMP Methadone Prohibition Policy" is a term adopted by plaintiff and is nowhere used in the PHMP's standard operation procedures.  And it is a mischaracterization of the former policy.  As the language quoted by plaintiff points out, under the former policy, licensees already enrolled in methadone maintenance programs at the time they were first contacted by PHMP were permitted to remain on methadone maintenance treatment provided that the licensee "agreed to a medically-supervised withdrawal from methadone within a time-frame established by the

PHMP-approved provider (in consultation, whenever possible, with the methadone administering provider) and the PHMP." Thus, under the former policy, a licensee receiving methadone maintenance treatment could participate in PHMP monitoring as long as there was a plan in place for the licensee to withdraw from methadone. Plaintiff's Deposition Exhibit P-2, Plaintiff's Appendix Tab F.

21. Disputed. It is clear at the hearing that Reynolds had some, however imperfect, knowledge of the policy on July 11, 2007. Plaintiff's Appendix in Support of Partial Summary Judgment, Tab F, Plaintiff's Deposition Exhibit P-7, at 37-38. In addition, the policy was discussed at a meeting with Glen J. Cooper and Georgina Miller from New Directions Treatment Services on May 5, 2008. Plaintiff's Appendix in Support of Partial Summary Judgment, Tab F, Plaintiff's Deposition Exhibits P-27, P-44. Likewise, the proposed changes to the policy were again discussed with Glen J. Cooper and Dr. Santoro in a phone conference on June 18, 2008. *Id*. Further, the defendants did not deny the existence of the PHMP methadone policy in their answer. They denied an allegation which was a totally inaccurate characterization of the policy. Amended Complaint and Defendants' Answer thereto ¶30.

22. Disputed. Under the former policy, defendants did not by written policy or practice exclude any person receiving methadone maintenance treatment from participating in or receiving the benefits of PHMP's services. Declaration of

3

Kevin Knipe ¶4, and PHMP Files Nos. 8507 and 8779 attached hereto. The policy itself says that licensees who are enrolled in methadone maintenance programs may participate in PHMP programs under certain conditions. Plaintiff's Deposition Exhibit P-2, Plaintiff's Appendix Tab F. Moreover, the PHMP standard operating procedures do not apply to the State Board of Nursing, which operates independently from PHMP. *See* attached Declaration of Carole Clark Smith ¶¶3-4; Deposition of Kevin Knipe (8/25/2011) at 12, Plaintiff's Appendix Tab D. ("We [PHMP] are separate from the licensing boards"). There is not and never has been a written policy of the State Board of Nursing to forbid a licensed nurse undergoing methadone maintenance treatment from practicing. Declaration of Carole Clark Smith ¶5.

23. Disputed. For the reasons set forth in paragraph 22, it is disputed that, under the former policy, PHMP and the Nursing Board would not allow any person to be receiving methadone maintenance treatment to participate in and benefit from their services, programs and activities relating to the licensing of nurses in Pennsylvania. *See* citations to the record in response to paragraph 22.

24. Disputed in part. It is undisputed that Pearl Harris testified as quoted. It is disputed that the testimony of Pearl Harris, who is not a defendant, is evidence of any effort of defendants to conceal the former policy. Moreover, Ms. Harris testified accurately that there was no law or policy or directive by the State Board

of Nursing that a nurse on methadone cannot practice as a nurse, and that a Nursing Board order prevails over any PHMP policy.  Plaintiff's Deposition Exhibit P-7 (Hearing Transcript 7/11/2007), Plaintiff's Appendix Tab F. Declaration of Carole Clark Smith ¶5.  In addition, Ms. Harris testified at her deposition that when she testified at the July 11, 2007, hearing that, if it is not written in a Board order, "there is nothing, to my knowledge, that the State Board of Nursing holds that a person cannot practice on Methadone," she was responding specifically as to the Board of Nursing as distinguished from PHMP.  Deposition of Pearl Harris (8/22/2011) at 126-27, Plaintiff's Appendix Tab C.  Further, Ms. Harris accurately testified at the July 11, 2007 hearing that at the time there were licensees on methadone maintenance who were being monitored by PHMP. Declaration of Kevin Knipe ¶4, and PHMP Files Nos. 8507 and 8779 attached hereto.

  25. Undisputed, except that for reasons previously stated Defendants dispute that plaintiff's term "Methadone Prohibition Policy" is an accurate characterization of the policy.  *See* defendants' response to paragraph 20.

  26. Disputed.  It is disputed that Nursing Board consent agreements and orders were subject to the PHMP operating procedure concerning methadone. Rather, the Nursing Board orders govern PHMP's monitoring.  *See* defendants' response to paragraph 22.  And while it is undisputed that Ms. Harris did not

disclose the current PHMP methadone policy in her testimony at the hearing, she was never asked about the PHMP policy. Plaintiff's Deposition Exhibit P-3 at 76, Plaintiff's Appendix Tab F; Deposition of Pearl Harris (8/22/2011) at 126-27, Plaintiff's Appendix Tab C.

27. Undisputed.

28. Disputed in part. Plaintiff has produced no evidence that there is a high degree of agreement between all experts concerning either the efficacy of methadone maintenance treatment or the appropriateness of the PHMP methadone policy. Defendants do not dispute that the quoted language is in Dr. Newman's report.

29. Undisputed, except that for reasons previously stated Defendants dispute that plaintiff's term "Methadone Prohibition Policy" is an accurate characterization of the policy. *See* defendants' response to paragraph 20.

30-32. Undisputed.

33. Undisputed. The report, however, relied in part on misrepresentations made by Ms. Reynolds.

34. Disputed. First, Dr. Woody makes no treatment recommendation for Reynolds. Plaintiff's Deposition Exhibit P-1 at 5. Declaration of Kevin Knipe ¶6 attached hereto. Indeed, Dr. Woody was never a PHMP-approved provider for Reynolds. *Id*. Further, under the former PHMP methadone policy, a licensee was

permitted to continue on methadone maintenance treatment as long as he or she agreed to "medically supervised withdrawal from methadone within a time frame established by the PHMP provider-approved provider (in consultation, whenever possible, with the methadone-administering provider) and the PHMP." Nowhere in the policy does it state any limit to the established "time-frame" for withdrawal. Dr. Woody's report says nothing about the length of time Reynolds should remain on methadone. Plaintiff's Deposition Exhibit P-1, Woody Report, Plaintiff's Appendix Tab F; Plaintiff's Deposition Exhibit P-2, PHMP Standard Operating Procedure on Eligibility, Licensee on Methadone Maintenance, Plaintiff's Appendix Tab F

35.     Disputed. Harris does not testify that she was aware of the report or that she never asked to see it. She states, rather, that she was aware that Dr. Woody had conducted an evaluation. She was never asked whether she ever requested to see the report. Deposition of Pearl Harris (8/22/2011) at 38-41, Plaintiff's Appendix Tab C. Further, the order to conduct the examination came from the Nursing Board and not PHMP. In accordance with the order the Woody report was submitted to the prosecuting attorney, and not PHMP. At the time, PHMP was not monitoring Reynolds. Declaration of Kevin Knipe ¶5 attached hereto; Declaration of Margaret A. Sheaffer ¶4 attached hereto.

36-45.     Undisputed.

46.   Undisputed.  By way of further response, Ms. Harris searched Reynolds' PHMP file for an authorization for Dr. Santoro to provide information to PHMP and an authorization to permit PHMP to speak to Dr. Santoro, and could not find either.  She then turned Dr. Santoro's letter over to her supervisor Kevin Knipe.  Deposition of Pearl Harris (8/22/2011) at 114-15, Plaintiff's Appendix Tab C.

47.   Undisputed.  By way of further response, Ms. Harris attempted to contact Reynolds by phone and wrote to her on March 5, 2008.   Deposition of Pearl Harris (8/22/2011) at 119-121, Plaintiff's Appendix Tab C.

48.   Undisputed.

49.   Disputed.  As an initial matter, Dr. Woody was never a treatment provider and made no treatment recommendations for Reynolds.  Declaration of Kevin Knipe ¶¶5-6; Plaintiff's Deposition Exhibit P-1, Woody Report, Plaintiff's Appendix Tab F.  The consent agreement required that Reynolds comply with the treatment recommendations of a PHMP-approved provider.  Dr. Woody was never an approved provider for Reynolds.  Kevin Knipe ¶ 6.

50.   Denied.  A Better Today was approved to treat Reynolds based on her own request.  Deposition of Pearl Harris (8/22/2011) at 78-79, Plaintiff's Appendix Tab C.  The consent agreement Reynolds signed required her to, among other things, comply with the recommendations of her approved treatment provider.

Defendants' Documents in Support of Summary Judgment, Board Proceedings, MLR 22391-22410.  Accordingly, Reynolds was required to follow the recommendations of A Better Today because that was her approved provider, and not because of any particular treatment recommendations.

51.     Undisputed.  By way of further response, the final order required Reynolds to comply with treatment recommendations made by her approved treatment provider.  Documents in Support of Defendants' Motion for Summary Judgment, Reynolds' PHMP File, MLR 1001.

52.     This paragraph is disputed to the extent it suggests that Ms. Harris' letter was inconsistent with a Nursing Board order.  On September 8, 2007, the State Board of Nursing adopted as its final order the hearing examiner's proposed adjudication.  Documents in Support of Defendants' Motion for Summary Judgment, Reynolds' PHMP File, MLR 980.  Among the provisions of that order was that the "Respondent must fully comply with [the provider's] recommendations as part of these probationary requirements."  Documents in Support of Defendants' Motion for Summary Judgment, Reynolds' PHMP File, MLR 1001.  Reynolds' provider, A Better Today, had recommended that she enter inpatient treatment to be weaned from methadone.  Reynolds had expressly stated her agreement to comply with this provision.  Documents in Support of

Defendants' Motion for Summary Judgment, Nursing Board Proceeding's, MLR 22360.

53. Disputed. The letter does not say that the basis for closing Reynolds' file that she had not entered inpatient treatment to be weaned from methadone. The letter does not state the reason Reynolds' file was closed. Plaintiff's Deposition Exhibit P-20, Plaintiff's Appendix Tab F.

54. Undisputed.

55. Undisputed, except that it was the view of PHMP that this policy was part of the internal operating procedures of PHMP and, therefore, was confidential. Deposition of Kevin Knipe (November 9, 2011) at 145; Plaintiff's Appendix Tab D.

56-61. Undisputed.

62. Disputed insofar as it is misleading. Cooper and Santoro were also told that individuals on maintenance drugs would be evaluated on a case-by-case basis, and that the individual would be referred to an addictionologist who would make a determination as to whether or not the individual on maintenance drugs is safe to return to the profession. Cooper and Santoro were told that PHMP would look at the individual's compliance with the other terms of probation, such as drug testing and support group attendance. If the person was compliant with the terms of probation, he would be allowed to return to work. Bernadette Paul also

participated in the conference.  Plaintiff's Deposition Exhibit P-44, Plaintiff's Appendix Tab F.

63.     Disputed.  The policy was still being reviewed by Kevin Knipe's superiors.   Deposition of Kevin Knipe (November 9, 2011) at 62; Plaintiff's Appendix Tab D.

64-67.     Undisputed.

68.     Disputed.  Exhibit P-44 at MLR 017404 does not state this.  Reynolds license had been suspended.  Under the final order she was permitted to seek reinstatement at any time.  Defendants Documents in Support of Summary Judgment, Reynolds PHMP File, MLR 979-980.

69.     Undisputed. By way of further response, in the conversation on June 18, 2008, Copper and Santoro were told in unmistakable terms that the policy would be changed.  There is no record that either individual ever contacted the State Department for further information about the policy.  Declaration of Kevin Knipe ¶7.

70.     Disputed.  There is no suggestion in Dr. Woody's report that he conducted any sort of testing for cognitive impairment or utilized any of the tools for screening cognitive impairment.  Plaintiff's Deposition Exhibit 1, Woody Report, Plaintiff's Tab F.

71. Disputed. Defendants had informed Reynolds' provider that the policy was going to change and discussed details on June 18, 2008. Glen Cooper had made several prior inquiries and there is no evidence to suggest that he was prevented from making additional inquiries on Reynolds' behalf. Declaration of Kevin Knipe ¶7.

                                **Respectfully submitted,**

                                **LINDA L. KELLY**
                                **Attorney General**

                **By:**    *s/Michael L. Harvey*
                                **MICHAEL L. HARVEY**
                                **Senior Deputy Attorney General**
                                **Attorney I.D. #30098**

                                **GREGORY R. NEUHAUSER**
                                **Chief Deputy Attorney General**
                                **Chief, Litigation Section**

**Office of Attorney General
Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA  17120
Phone:  717-783-6896 - Direct
Fax:     717-772-4526
Email:  mharvey@attorneygeneral.gov**

**Date: December 19, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELINDA LAMBERSON REYNOLDS,<br>　　　　　　Reynolds<br><br>　　　　v.<br><br>COMMONWEALTH OF PENNSYLVANIA, ET AL.,<br>　　　　　　Defendants | CIVIL ACTION<br>NO. 3:09-cv-1492<br><br>(Judge Munley)<br><br>Electronically Filed |

## CERTIFICATE OF SERVICE

I, Michael L. Harvey, Senior Deputy Attorney General, Commonwealth of Pennsylvania, hereby certify that on December 19, 2012, I caused to be served a copy of the foregoing document titled Defendants' Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment:

### VIA ELECTRONIC FILING

Lawrence D. Berger, Esquire
Shepherd, Finkelman, Miller & Shah, LLP
35 E. State Street
Media, PA 19063
*(Counsel for Plaintiff)*

Michael Churchill, Esquire
Public Interest Law Center of Philadelphia
1709 Benj. Franklin Pkwy., 2d Floor
Philadelphia, PA 19103
*(Counsel for Plaintiff)*

　　　　　　　　　　　　　　　　　*s/Michael L. Harvey*
　　　　　　　　　　　　　　　　**MICHAEL L. HARVEY**
　　　　　　　　　　　　　　　　**Senior Deputy Attorney General**